UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**BRIANA MARIE JENSEN,**

    Plaintiff,

  v.                                                                                    Case No. 19-CV-1714

**ANDREW M. SAUL,**
**Commissioner of Social Security,**

    Defendant.

---

## DECISION AND ORDER

---

Briana Marie Jensen seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claims for a period of disability and disability insurance benefits and for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons explained below, the Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

On July 29, 2016, Jensen filed a Title II application for a period of disability and disability insurance benefits. (Tr. 13.) Jensen subsequently filed a Title XVI application for supplemental security income on October 31, 2016. (*Id.*) In both applications, Jensen alleged disability beginning on June 1, 2016 due to bipolar disorder, learning issues, stomach issues, Barrett's syndrome, migraine headaches, attention deficit hyperactivity disorder (ADHD), cervical intraepithelial neoplasia grade 2, and herpes labialis. (Tr. 74–75, 118.) Jensen's applications were denied initially and upon reconsideration. (Tr. 13.) Jensen filed a request

for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on November 7, 2018. (Tr. 30–71.) Jensen testified at the hearing, as did Karen Schneider, a vocational expert ("VE"). (Tr. 30.)

In a written decision issued February 4, 2019, the ALJ found that Jensen had the severe impairments of borderline intellectual functioning, bipolar disorder, anxiety disorder, and ADHD. (Tr. 16.) The ALJ further found that Jensen did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 17–19.) The ALJ then found that Jensen had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: limited to simple, routine, repetitive tasks; limited to understanding, carrying out, and remembering no more than simple instructions; limited to low stress work, defined as a job with no inflexible or fast-paced production requirements, involving only simple work related decision making and no more than occasional changes in work setting; and limited to occasional interaction with supervisors, coworkers, and the public. (Tr. 19.)

The ALJ found that Jensen had no past relevant work (Tr. 23) but given Jensen's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. 23–24.) As such, the ALJ found that Jensen was not disabled from her alleged onset date until the date of the decision. (Tr. 24.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Jensen's request for review. (Tr. 1–6.)

2

# DISCUSSION

## *1.    Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## *2.    Application to this Case*

Jensen argues that the ALJ erred by: (1) improperly assessing her fluctuating mental state; (2) failing to make findings regarding her need to be off task; (3) erroneously formulating

3

her RFC; and (4) improperly evaluating her subjective symptoms. (Pl.'s Br., Docket # 14.) I will address each argument in turn.

### 2.1 Fluctuating Mental State

Jensen argues that, although the ALJ acknowledged that the symptoms of her bipolar disorder fluctuated based on her compliance with prescribed medication, the ALJ erred by not making specific findings regarding the frequency, severity, and duration of these periods of noncompliance. (*Id.* at 6–7.) Jensen asserts that the record contains frequent instances of noncompliance with prescribed medication (accompanied by periods of mania) which demonstrate that she cannot sustain full-time employment. The Commissioner contends that the ALJ did not ignore Jensen's variable functioning or that her symptoms increased when she was non-compliant with her medication, but explicitly considered that evidence when evaluating Jensen's RFC, and accommodated her fluctuating symptoms by adopting the limitations identified by the state agency psychiatrists, who explicitly considered that evidence. (Def.'s Br. at 11, Docket # 18.)

The ALJ's decision is largely based on the determination that Jensen's mental health symptoms, particularly stemming from bipolar disorder, were well controlled when she took her medication. For example, in considering Jensen's RFC, the ALJ noted that the treatment records from 2016 to 2018 showed "a swing between somewhat functional to episodes of poor functioning, largely related to adherence to prescription medication." (Tr. 20.) When off her medication, the ALJ noted, Jensen "becomes unstable, uncontrolled, irritable/agitated, angry, and spends the majority of time in her room." (*Id.*) Further, "[h]er mental status examinations during these periods showed a labile affect, guarded attitude, labile or depressed mood, distractible thought processes, poor insight and judgment, poor or fair eye contact, and

4

Case 2:19-cv-01714-NJ    Filed 01/20/21    Page 4 of 14    Document 21

distracted responsiveness." (*Id.*) In contrast, when Jensen took her medication as prescribed, the ALJ stated that Jensen "had better control of her mood swings, did not get nearly as angry, could be positive, had less anxiety, and she was able to take care of herself and her child." (*Id.*) The ALJ noted that her mental status examinations during these periods showed "a flat affect, cooperative attitude, euthymic mood, organized thought processes, fair insight and judgement, good eye contact, and engaged responsiveness." (*Id.*)

The evidence shows that Jensen was frequently off her medication, including in March 2016, July 2016, February 2017, May 2017, and July 2018. Furthermore, the record reveals that Jensen largely depended on help from her mother to stay on her medications. (Tr. 61.) Jensen testified that she had manic periods weekly and still experienced them when she took her medication. (Tr. 55.) Moreover, Jensen stated that she stopped taking her medications because they made her sick. (Tr. 56.) Yet, the ALJ concluded, without adequate explanation, that Jensen was nevertheless able to engage in full-time work. Considering that the record is replete with more periods of noncompliance than not, the ALJ's mere acknowledgement of Jensen's fluctuating symptoms does not constitute substantial evidence that Jensen could perform the demands of full-time work. Although the ALJ did not outright ignore Jensen's manic periods, which seemed to usually coincide with periods where she stopped taking medication, the ALJ did not explain why Jensen's more controlled periods were entitled to more weight. This is especially troubling considering that the failure to adhere to a medication regimen may be a symptom of bipolar disorder itself. *See Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) (noting that mental illness in general and bipolar disorder in particular "may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment.").

Further, Jensen's treating provider, Dr. Dean Smith, opined that she had very poor insight and that it was difficult to keep her on her medications. (Tr. 486.) He also stated that when off her medications, Jensen exhibited out of control behavior; that her constant relapses with severe mania would disrupt her ability to attend or perform work; and that even on medication, she struggled with basic day-to-day of self-care. (*Id.*) The ALJ gave little weight to Dr. Smith's opinion, partly because he found it inconsistent with the provider's own treatment records. (Tr. 22.) However, there was nothing inconsistent with Dr. Smith's opinion that Jensen experienced constant relapses with severe mania but sometimes had periods where her symptoms improved.

Moreover, the periods that the ALJ relied on as evidence do not necessarily indicate Jensen's ability to sustain full-time employment. *See Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) (noting that "bipolar disorder ... is by nature episodic and admits to regular fluctuations even under proper treatment."). Although some treatment records indicate improvement or relief from symptoms, improved symptoms may still be severe. *See Johnson v. Colvin*, No. 15 C 9737, 2017 WL 219514, at *5 (N.D. Ill. Jan. 19, 2017) (in order to use response to treatment as a basis for discounting symptoms, "the ALJ must connect how [the] improvement restored Plaintiff's ability to work"); *Salazar v. Colvin*, No. 13 C 9230, 2015 WL 6165142, at *4 (N.D. Ill. Oct. 20, 2015) (functional limitations may remain even after improvement). The ALJ's failure to grapple with the fluctuating nature of Jensen's bipolar disorder means that there is not a logical bridge from the evidence to the ALJ's conclusion that Jensen could perform the demands of full-time work. Therefore, remand is warranted.

### 2.2 Off-Task Limitation

Jensen also argues that the ALJ erred when he determined that she had moderate limitations in maintaining concentration, persistence, or pace and asked the VE about allowable off task time yet failed to make findings as to how often she would be off task. (Pl.'s Br. at 13.) The Commissioner argues that, contrary to Jensen's argument, the ALJ was not required to address why a limitation for off-task behavior was unnecessary merely because the ALJ asked the vocational expert about tolerance for off-task behavior in unskilled jobs. (Def.'s Br. at 12.) The Commissioner further argues that, because the ALJ did not include an off-task limitation in his RFC assessment, the vocational expert's response to the question about tolerance for off-task behavior was not material and the ALJ did not need to discuss it in his written decision. (*Id.* at 13.)

This case is similar to *Crump v. Saul*, 932 F.3d 567 (7th Cir. 2019). In *Crump*, the Seventh Circuit remanded where the record demonstrated that the claimant's difficulties with concentration, persistence, or pace would "pose a significant hurdle" for her to stay on task at work, but the ALJ merely limited the claimant to simple, routine, and repetitive tasks with few workplace changes. *Id.* at 571. The ALJ in *Crump* posed two hypotheticals to the VE. The first hypothetical asked only about the availability of work for someone who could perform simple, repetitive tasks; the second hypothetical incorporated the express functional limitation of a person able to perform simple and repetitive tasks also being off-task 20 percent of the time or otherwise requiring two unscheduled absences per month. *Id.* The VE opined that the second hypothetical was work preclusive. *Id.* The Seventh Circuit concluded that the ALJ "failed to incorporate this opinion anywhere in the RFC, leaving the RFC altogether uninformed by considerations of off-task time or unplanned leave." *Id.*

7

Similarly, the record in this case demonstrates Jensen's limitations in maintaining concentration, persistence, or pace. Jensen's treatment records frequently note that she was either distractible or distracted. (Tr. 336, 355, 348, 507, 512.) Other treatment notes reflect that her attention was "not as good as it was" (Tr. 577) or that she had okay attention (Tr. 576). Further, the state agency consultants at the initial and reconsideration levels determined that Jensen would have moderate limitations maintaining attention and concentration for extended periods, which would also cause her to be distracted by others if working in close proximity. (Tr. 81.) Consultative examiner Dr. Scott Trippe found that Jensen had a moderate impairment in her ability to concentrate, persist, and maintain work pace. (Tr. 571.) At the hearing, Jensen testified that while working at Panera, she "had a hard time concentrating" and stated: "I'll be doing one task but then I'll just jump to something else and I'm not able to focus on that one thing I'm supposed to be doing." (Tr. 41.) Jensen also testified that her medications made her sick (namely headaches and vomiting) and she was fired from one job for her resulting frequent bathroom breaks. (Tr. 52.) The ALJ initially posed only two hypothetical questions to the VE. The first asked about whether there were jobs in the workforce for someone who could perform simple, repetitive tasks. The VE responded that there were. The ALJ then added:

> Now, if I was to add a limitation to that hypothetical due to a combination of mental impairments and associated symptoms, the individual would miss two or more days of work per month or be off task 20 percent or more of a normal workday due to the need for frequent breaks, would there be any employment available for such an individual?

(Tr. 65.) The VE responded that the hypothetical was work preclusive. (*Id.*) The ALJ inquired about the availability of jobs for someone who, due to mental health limitations, would be off-task or absent. This signaled the ALJ's acknowledgement of Jensen's potential limitations

8

with respect to being off task. However, the ALJ did not incorporate the VE's response in the RFC, "leaving the RFC altogether uninformed by considerations of off-task time or unplanned leave." *Crump*, 932 F.3d at 570. Therefore, this error also warrants remand.

### 2.3 RFC

Relatedly, Jensen argues that the ALJ did not adequately accommodate her mental limitations into her RFC. (Pl.'s Br. at 15.) Jensen notes that SSR 96-8p requires that an ALJ provide a narrative discussion explaining how the evidence supports each conclusion. (*Id.*) Jensen argues that the record does not support her ability to perform full-time work if limited to work that does not involve inflexible or fast-paced tasks. (*Id.*) Instead, she asserts that the evidence reflects that she had serious problems sustaining the performance of jobs of any kind, regardless of expected work pace. (*Id.* at 16.) In response, the Commissioner notes that the ALJ needed only to minimally articulate his reasoning and gave great weight to state agency psychologists, adopting limitations consistent with their opinions, along with an additional limitation to address workplace stress. (Def.'s Br. at 15.) The Commissioner argues that, even if the ALJ could have more specifically explained why he added a limitation to reduce workplace stress, any error was harmless because the outcome would have been the same. (*Id.*)

Again, the ALJ incorporated the following non-exertional restrictions into Jensen's RFC: limited to simple, routine, repetitive tasks; limited to understanding, carrying out, and remembering no more than simple instruction; limited to low stress work, defined as a job with no inflexible or fast-paced production requirements, involving only simple work related decision making and no more than occasional changes in work setting; and limited to occasional interaction with supervisors, coworkers, and the public. (Tr. 19.) The ALJ did not

9

explain why a limitation of low stress work, defined as a job with no inflexible or fast-paced requirements, accounted for Jensen's mental impairments. However, this may have been a harmless error if no evidence in the record supports restrictions greater than those of the state agency physicians. *See Palmer v. Saul*, 779 F. App'x 394, 398 (7th Cir. 2019) ("Significantly, the ALJ's RFC findings were more restrictive than the conclusions of [the state's] non-examining physicians, and [the claimant] does not explain how a more restrictive RFC could have negatively affected his claim."). On remand, the ALJ should include all limitations supported by the record in Jensen's RFC.

### 2.4 Evaluation of Subjective Symptoms

Finally, Jensen argues that the ALJ failed to properly evaluate her reported symptoms. (Pl.'s Br. at 16.) The ALJ found that Jensen's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms was not entirely consistent with the medical evidence and other evidence in the record. (Tr. 20.) Jensen asserts that the ALJ made errors in assessing her activities of daily living (namely childcare), anger issues, and migraine headaches.

The Commissioner's regulations set forth a two-step test for evaluating a claimant's statements regarding her symptoms. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, if the claimant has such an impairment, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* If the alleged limitations are not substantiated by the medical signs and laboratory findings of record, the ALJ considers whether the statements are consistent with the record of as a whole considering a variety of

10

Case 2:19-cv-01714-NJ   Filed 01/20/21   Page 10 of 14   Document 21

factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, used for relief of the symptoms; other measures the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. *Id.*

A court's review of a credibility, or consistency, determination is "extremely deferential." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). On judicial review, courts "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Id.* at 413–14 (internal quotation marks and citations omitted).

Jensen argues that the ALJ did not explain why taking care of her son was probative of her ability to sustain work or led to the conclusion that her allegations were inconsistent with the record. (Pl.'s Br. at 19.) The Commissioner asserts that the ALJ reasonably considered that when Jensen was compliant with her medication, she was capable of taking care of herself, her home, and her child. (Def.'s Br. at 19.) While "it is proper for the Social Security Administration to consider a claimant's daily activities in judging disability," the Seventh Circuit has cautioned against equating these daily activities "with the challenges of daily employment in a competitive environment, especially when the claimant is caring for a family member." *Beardsley v. Colvin*, 758 F.2d 834, 838 (7th Cir. 2014). Jensen testified that she was able to care for her son with help from her family, whom she lives with. The ALJ

never explained how Jensen's caring for her son with considerable help from her family was inconsistent with any limitations she alleged.

Next, Jensen challenges the ALJ's failure to evaluate her anger and need to self-isolate and sleep during the daytime. (Pl.'s Br. at 18.) Jensen says that, contrary to SSR 16-3p, the ALJ's opinion contains no analysis of why these allegations were consistent or inconsistent with the record as a whole. (*Id.*) The Commissioner responds that in reviewing a claimant's statements and testimony, the ALJ need not address the claimant's individual statements, but need only minimally articulate his view of the evidence. (Def.'s Br. at 19–20.) Based on the record, Jensen's anger, need to isolate, and need to sleep during the daytime were associated with the manic periods of her bipolar disorder. The totality of the ALJ's explanation was that Jensen's medication, when she took it, was "largely successful in improving her symptoms." (Tr. 21.) Further consideration of Jensen's fluctuating mental state and adherence to medication may alter the analysis of Jensen's alleged symptoms, particularly those associated with her manic periods.

Finally, Jensen argues that the ALJ failed to properly assess whether her migraine headaches supported that she would be off task for a work-preclusive amount of time. (Pl.'s Br. at 19–20.) The Commissioner asserts that the ALJ reasonably concluded that Jensen's migraines were non-severe, a conclusion consistent with the state agency consultants' opinions. (Def.'s Br. at 20.) Further, the Commissioner argues, Jensen does not point to any evidence to show that further limitations were warranted based on her migraines, so any error by the ALJ in considering Jensen's migraines is harmless. (*Id.* at 20–21.)

At step two of the five-step sequential evaluation, the ALJ found that while the record showed Jensen had been treated for migraine headaches, the impairment was non-severe. (Tr.

12

16.) An impairment is severe if "it significantly limits an individual's physical or mental abilities to do basic work activities" and is non-severe if it is a slight abnormality "that has no more than a minimal effect on the ability to do basic work activities." Social Security Ruling ("SSR") 96-3p (rescinded effective June 14, 2018). The ALJ noted that an MRI of Jensen's brain in June 2016 showed no evidence of intracranial pathology and no etiology identified for headaches. (Tr. 16.) The ALJ also noted that Jensen had been prescribed Gabapentin and Imitrex in the past. (*Id.*) Further, the ALJ stated that, other than medication, Jensen received no specific treatment for migraines and no additional treatment had been recommended. (*Id.*)

Notwithstanding the ALJ's determination that Jensen's migraines were non-severe, in assessing her RFC, the ALJ had to consider limitations and restrictions attributable to all of Jensen's medically determinable impairments—whether severe or not. SSR 98-6p. The ALJ's decision is devoid of any reference to the limiting effects of Jensen's migraines. Jensen testified that she experiences migraines "almost every day" and when asked how long they last, she responded, "Sometimes days and then it makes me sick and I puke." (Tr. 50.) Jensen asserts that her migraines are a possible side effect of her bipolar medication and they contribute to her need for time off task. Because the ALJ did not mention Jensen's migraines after determining that the impairment was non-severe, it is impossible to follow any reasoning with respect to why Jensen's testimony regarding the effects of her migraines was rejected. On remand, the ALJ should make clear the determination of the severity and limiting effects of Jensen's migraines.

## CONCLUSION

The ALJ erred in assessing Jensen's mental impairments and subjective symptoms due to her bipolar disorder. Accordingly, the Commissioner's decision will be reversed and

13

remanded. Although Jensen requests that this court award benefits, an award of benefits is appropriate only "if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). Here, there are unresolved issues, and this is not a case where the "record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Therefore, the case is appropriate for remand pursuant to 42 U.S.C. § 405(g), sentence four.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 20th day of January, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge